## CLARK v. FIDELITY & CASUALTY CO. OF NEW YORK et al.

### No. 5098.

Court of Appeal of Louisiana.
Second Circuit.

June 29, 1935.

Irion & Switzer and Malcolm E. Lafargue, all of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

DREW, Judge.

Plaintiff sued for damages for personal injuries received by her when struck by an automobile.

The defendants admit liability, and the only question for determination here, as it was in the lower court, is the quantum of damage.

Plaintiff is a negro woman about thirty-seven years of age. For eleven years prior to the accident she had been employed by Mr. Reese Jones as a cook, which occupation, we gather from the testimony of a member of Mr. Jones' household, carried with it most of the chores around the house. She has always been a willing worker and needed no assistance in performing her duties at the Jones home. Plaintiff's weekly wage was $4. Since the accident, she has been unable to perform all the duties she did before, and Mr. Jones was forced to employ a negro man to do the heavy part of her work. Since the accident, plaintiff has complained constantly of pain in her back in the sacro-iliac region, and in her leg. She likewise complains of headaches, which we will not consider under the pleadings.

The above-stated facts are uncontradicted and we therefore take them as true. The dispute in the case is not as to her present condition, but whether the accident was the cause of it or some systemic condition.

After alighting from a street car on the afternoon of September 9, 1934, plaintiff was struck by an automobile, driven by defendant Will Roach. With how much force she was struck is debatable, and whether she was knocked or carried 4 or 12 feet is likewise uncertain, but from the injuries, cuts, and bruises she received, it is easy to see that she was struck with considerable force. Immediately after the accident, plaintiff was carried to the sanitarium, where she was given first-aid treatment, and one or two hours later carried to her home, where she remained the greater part of the time for four weeks, but was unable to return to work for eight weeks. About three days after the accident, Dr. Boyce began treating plaintiff, and was continuing his treatments at the time of trial below, which was January 24, 1935. When he first saw her, he described her condition as follows:

"A. * * * At the time of my first examination she had come to my office and her right side, the region of the lower edge of the ribs, strapped with adhesive, which I removed; her side showed signs of bruise—there was a cut which had been sutured and bruises to the anterior surface of the chest and region of the second rib; the right elbow both knees, and bruises to the right arm is all I can remember; there may have been some other minor bruises."

At first he was under the impression that she had a fracture of the tenth rib on the right side also, but later decided it was only a bruise. At the time of his first examination, she was passing blood in the urine. The test showed 2-plus blood, 1-plus pus. At the time of the trial the blood had cleared up, with 1-plus pus still showing. Dr. Boyce further testified that he had continued to treat her since the accident for a complaint in the back, in the sacro-iliac region. He is positive that the passage of blood was due to trauma of the right kidney. He found a recto-vaginal fistula which he contends has been there

for many years, and there is no connection between it and her present complaint. The wound plaintiff received in the chest required two or three stitches, but had healed entirely soon after the accident. That the present condition of plaintiff's back was due solely to the accident, is the opinion of Dr. Boyce.

Dr. Harmon testified for defendant. He examined plaintiff for defendant on November 23, 1934. He admits she had pain in the back, but attributes it entirely to pathology in the uterus, caused by childbirth some time previous. His description of what he found upon his examination of her is as follows:

"A. Well, she was complaining of pain, and I don't think there was any question but that she was. I attribute the pain to pathology in the uterus—she has had some children—she has laceration clear through the perineum and uterus into the rectum which allows the bowel content to come through an abnormal passage, of course. She has laceration of the perineum with some enlargement of the uterus, which was very tender, and that is a very common condition in women who have given birth to children, to have laceration."

Dr. Barrow X-rayed plaintiff on November 19, 1934, at the request of Dr. Harmon, and found no bony defects or abnormalities. Since it is not now contended that there are any defects or abnormalities in the bones, Dr. Barrow's testimony is useless in arriving at a conclusion as to the cause of plaintiff's present partial disability and suffering. We have the two doctors, Boyce and Harmon, who disagree as much as any two doctors could as to the cause of plaintiff's trouble. However, both admit that she has a painful condition of the back. Dr. Harmon only examined her once, and that was more than two months after the accident. Dr. Boyce had treated her constantly since three days after the accident, and is corroborated in his findings and opinion by the testimony of plaintiff and Mrs. Rand, who lives in the Jones home and observed plaintiff daily since eight weeks after the accident. He is further corroborated by the fact that prior to the time of accident, plaintiff was able to work and did work, without assistance, and since the accident she has to have assistance to do the heavy part of her household duties.

We have therefore concluded that plaintiff's condition at the time of the trial was caused, if not entirely, at least to a great extent, by the accident. There is no testimony in the record to show that her condition will be permanent, nor is there even a guess as to how long her present condition will continue, and from all the testimony we conclude that the injury to the back, while somewhat painful and bothersome, is not of a serious nature.

The lower court awarded plaintiff $150 for pain and suffering, and $32 for loss of wages for eight weeks during which time she was unable to work. There is no dispute as to the $32 to which she is entitled for loss of wages; and as she is making the same wages now as prior to the injury, we feel the only part of the judgment which should be disturbed is that for pain and suffering.

We are convinced the award of the lower court of $150 for this item is inadequate and that it should be increased to the sum of $500.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by increasing the award in favor of plaintiff from $182 to $532, and, as amended, the judgment is affirmed; costs of both courts to be paid by defendant.